**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal Case No. 24-454-JEB** |
| **v.** | : | |
| | : | |
| **RICKIE BAILEY, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**UNITED STATES' MEMORANDUM IN AID OF SENTENCING**</u>

Rickie Bailey, Jr. is a serial fraudster. In 2014, Chesapeake Police Department officers encountered him at a Virginia motel in possession of counterfeit debit cards. He pled guilty to possession of fifteen or more counterfeit access devices in the Eastern District of Virginia and received a 33-month prison sentence. Undeterred by his first federal prison stint, approximately one year after he was released from custody, Bailey continued to engage in fraud. Between July 2018 and October 2018, he racked up thousands of dollars in unauthorized charges at several Virginia hotels by using fraudulent cards embossed with the names and account numbers of other people. Following his arrest, he pled guilty to conspiracy to commit access device fraud in the Eastern District of Virginia, which prompted the judge who presided over his 2014 case to revoke his supervised release and impose an additional 14-month prison sentence. The judge in the new case then sentenced Bailey to 46 additional months in prison—the top of the guidelines—to be served consecutively to the 14-month sentence. Unfortunately, Bailey's second stint on federal supervised release has gone as poorly as his first. He has violated no fewer than five of the terms of his supervision, most notably by repeatedly engaging in additional criminal conduct, including attempting to commit identity fraud. Even while being booked, he provided false identification and signed booking paperwork under a false name. The government requests that the Court revoke his supervision and sentence him to 24 months' imprisonment, the top of the guidelines range.

## I.      Background

Through his repeated contacts with the criminal justice system, which include multiple convictions, Bailey has made it clear that he is unwilling to conduct himself in a law-abiding manner and that he lacks respect for the judicial system.

In 2012, he was convicted of assault and battery and failure to comply in connection with a 2008 domestic violence incident. Notably, he failed to comply with a domestic violence intervention program and also failed to appear in court. PSR ¶ 62, 64.[1]

In 2013, he was charged in another domestic violence case. Although he entered the domestic violence intervention program, he only attended 5 out of 18 classes. PSR ¶ 66.

In 2014, he was confronted by officers from the Chesapeake Police Department at a Virginia motel. During a search of his room, officers found 18 debit cards, 17 of which had no name embossed on them. One card had another individual's name embossed on it.  Officers found seven additional debit cards in Bailey's wallet; six had names other than his embossed on them. Officers also discovered a box under his bed, which contained a magnetic card reader/writer and approximately 21 debits cards with embossed numbers and names other than Bailey's. Of the 46 recovered cards, 23 had been re-encoded, i.e., had the data on their magnetic strip changed. Officers also located an $8,481.06 check payable to J.A. in Bailey's car along with notebook paper with handwritten names, dates of birth, and social security numbers. Moreover, one of Bailey's phones had an image of a Virginia identification card featuring Bailey's picture but J.A.'s name. *See* PSR ¶ 68.

As a result of this conduct, Bailey pled guilty to one count of possession of fifteen or more counterfeit access devices in the Eastern District of Virginia and was sentenced to 33 months in

---

[1] All citations to the Presentence Investigation Report are to Document No. 14 in Case 2:19-CR-97-RBS-DEM (E.D. Va.).

prison, the bottom of the guidelines range, to be followed by three years of supervised release. PSR ¶ 68. He was released from BOP custody in July 2017 but was held on a detainer by the Chesapeake Sheriff's Office until the following month. To say he performed horribly on supervision would be an understatement. In addition to testing positive for cocaine, changing his residence without reporting it, and failing to appear in court, he engaged in nearly the exact criminal conduct that led to his first federal conviction. PSR ¶ 68.

Specifically, within one year of being released from custody, from no later than July 2018 through October 2018, Bailey racked up thousands of dollars in unauthorized charges at several hotels in Virginia by using fake and fraudulent credit cards embossed with the names and account numbers of other persons. He purchased the names and account numbers on the internet and used the information to create fake IDs and credit cards. Aided by his co-conspirator, he created the fake credit cards by stealing gifts cards and prepaid cards from local merchants and altering the cards using various device-making equipment. He charged fifteen different stays at nine different hotels in Virginia, and possessed, used, or attempted to use at least 115 counterfeit or unauthorized credit cards. *See generally* PSR ¶ 11. His rampant fraud only stopped after his arrest in Chesapeake on October 19, 2018. *See* PSR ¶ 22.

Bailey ultimately pled guilty to one count of conspiracy to commit access device fraud in June 2019, which resulted in his supervision being revoked and the judge in that case imposing an additional 14 months of incarceration. In September 2019, the judge in his new case sentenced him to 46 months in prison—the top of the guidelines—to run consecutively to the 14-month sentence. Thus, in total, Bailey was sentenced to five years in prison.

After serving the additional prison sentence, Bailey was released from BOP custody. His three-year term of supervised release started on June 7, 2023. *See* ECF No. 9 at 2.

3

Unfortunately, once again, Bailey's performance on supervision has been nothing short of dismal. By racking up five separate supervised release violations, including committing additional criminal conduct, he has shown a complete unwillingness to follow the law and court orders. In addition to committing more crimes, he has failed to make child support payments, failed to secure approval from the probation office before traveling, failed to notify his probation officer of law enforcement contact within 72 hours, and failed to get approval before changing his residence. *See id.* at 3-4.

Bailey's criminal violations during his second stint on federal supervision have been more of the same. On June 18, 2024, approximately one year after being released from prison, he entered a check cashing store in Norfolk, Virginia, and handed the teller a $12,567.05 check made payable to J.L. that was drawn on the account of an El Paso business. Bailey tried to cash the check and presented the teller with a Pennsylvania driver's license containing his photograph and J.L.'s name. The teller called the maker of the check who reported that it had been lost in the mail and was in a stop payment status. Bailey confessed to stealing the check and having a fake ID made to match the name on the check. *See* Stipulation of Facts, *Commonwealth of Virginia v. Rickie Bailey*, CR25000304 (Cir. Ct. Norfolk 5/26/2025) (attached as Exhibit A). He was charged with a variety of fraud-related offenses and eventually pled guilty to attempting to commit identity fraud and attempting to obtain money by false pretenses. ECF No. 9 at 2; Plea Agreement ¶ 2, *Commonwealth of Virginia v. Rickie Bailey*, CR25000304 (Cir. Ct. Norfolk 5/21/2025) (attached as Exhibit B).

Of course, Bailey did not stop there. On the contrary, in early October 2024, a criminal complaint filed in Stafford County noted that an officer responded to a car crash, which involved thousands of dollars in damage. The complainant indicated that the subject—Rickie Bailey—fled

the scene but was apprehended two miles away.  Rather than immediately taking responsibility for the event, Bailey provided the officer with a fake ID and social security card. He even signed the booking paperwork using a false name. *See* Criminal Complaint, *Commonwealth of Virginia v. Rickie Bailey*, CR2500105 (Cir. Ct. Stafford 10/21/2024) (attached as Exhibit C).[2] Bailey ultimately pled guilty to four offenses, including forgery of a public record and identity theft to avoid arrest.

## II.      Sentencing Guidelines

At the time of his 2019 sentencing, Bailey was in Criminal History Category V. At a minimum, his Virginia state convictions constitute Grade B violations. *See* USSG §7C1.1(a)(2) (noting that a Grade B violation includes conduct constituting any federal, state, or local offense punishable by a term of imprisonment exceeding one year);[3] *see also* ECF No. 9 at 4. Thus, the recommended guidelines range for his offense is 18 to 24 months' imprisonment. USSG §7C1.5; ECF No. 9 at 4. Because his underlying conviction was a Class C felony, the maximum sentence the Court can impose is 24 months' imprisonment. ECF No. 9 at 4 (citing 18 U.S.C. § 3583(e)(3).[4]

---

[2] The Criminal Complaint was emailed to government counsel from the Clerk of the Circuit Court for Stafford County Circuit Court in response to a request for a factual statement relating to CR25000105-00, 02, and 09.

[3] The Guidelines stress that the grade of violation does not depend on what a person is convicted of, but rather the defendant's actual conduct. USSG §7C1.1, comment. (n.1). Bailey's attempt to cash a stolen check at a check cashing store in Norfolk using fake identification would support a Bank Fraud conviction, in violation of 18 U.S.C. § 1344, assuming the stolen check corresponded to an account held at a financial institution as defined at 18 U.S.C. § 20. Because Bank Fraud carries a thirty-year maximum sentence, Bailey's conduct arguably could constitute a Grade A violation.  *See* USSG §7C1.1(a)(1) (a Grade A violation includes "*conduct* constituting… any … federal … offense punishable by a term of imprisonment exceeding twenty years") (emphasis added).

[4] A Grade A violation would result in a recommended sentence of 30 to 37 months' imprisonment, but the Court cannot sentence Bailey to more than 24 months' imprisonment.

### III.    Recommended Sentence

In determining what sentence is appropriate, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(a)(7).  Last year, the Supreme Court held that the Court may not consider the factors set forth in 18 U.S.C. § 3553(a)(2)(A), i.e., the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Esteras v. United States,* 606 U.S. 185 (2025). Practically speaking then, the Court should not consider retribution in imposing a sentence, but rather focus on deterrence, incapacitation, and rehabilitation.

Here, a 24-month sentence is warranted for one reason – incapacitation. Although it would be wonderful if two additional years in federal prison would deter Bailey from engaging in additional criminal behavior, given that he was not deterred by a 33-month federal prison sentence or an additional 60 months in prison, it seems highly unlikely that he will be deterred by any additional prison sentence imposed by this Court. A sentence of two years, however, will at least incapacitate him and ensure that he cannot further victimize others during that time.

### CONCLUSION

The United States requests that the Court revoke Rickie Bailey, Jr.'s supervised release and sentence him to 24 months of incarceration.

Respectfully submitted,

JEANINE F. PIRRO
UNITED STATES ATTORNEY

By:  /s/ *Kondi J. Kleinman*
Kondi J. Kleinman, Cal. Bar No. 241277
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W. | Washington, D.C. 20530
(202) 252-6887 | kondi.kleinman2@usdoj.gov

6